# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41505

ALAN GOLUB and MARILYN GOLUB, )
husband and wife, )
)
    Plaintiffs-Respondents, )
)
v. )
)
KIRK-SCOTT, LTD., a Texas corporation, )
)
    Defendant-Appellant, )
)
and )
)
KIRK-HUGHES DEVELOPMENT, LLC, a )
Delaware limited liability company; )
INTERNAL REVENUE SERVICE; )
TOMLINSON NORTH IDAHO, INC., an )
Idaho corporation; GERALDINE KIRK- )
HUGHES and PETER SAMPSON, husband )
and wife; KIRK-HUGHES & ASSOCIATES, )
INC., a Nevada corporation; KELLY )
POLATIS, an individual; DELANO D. and )
LENORE J. PETERSON, husband and wife, )
)
    Defendants. )
_____ )

Boise, December 2014 Term

2015 Opinion No. 12

Filed: January 30, 2015

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

The district court's orders are affirmed.

Crotty & Son, PLLC, Spokane, Washington, for Appellant Kirk-Scott, Ltd. Matthew Z. Crotty argued.

Winston & Cashatt, Lawyers, Coeur d'Alene, for Respondents. Michael T. Howard argued.

_____

J. JONES, Justice

    This case involves a dispute between two creditors as to whose claim against their debtor's property has priority. The respondents, Alan and Marilyn Golub (Golubs), recorded a judgment in the amount of $941,000 against their judgment debtor, Kirk-Hughes Development,

LLC (KHD), giving Golubs a judgment lien on property owned by KHD in Kootenai County. KHD now claims to have executed a deed of trust on the property in question several years before Golubs acquired their lien. The beneficiary of the deed of trust is another defendant, Kirk-Scott, Ltd. (KS). The district court granted summary judgment to Golubs, finding that Golubs' duly recorded judgment lien had priority over KS' prior, unrecorded deed of trust. KS timely appealed.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Alan Golub was the listing real estate agent for properties then owned by Sloan and Peterson, who each sought to sell their properties near Coeur d'Alene, Idaho. Golub worked with other real estate agents to persuade Geraldine Kirk-Hughes and Geraldine's sister, Balinda Antoine, to participate in a development project potentially involving the purchase of the Peterson and Sloan properties, among others. In July 2004, KS, a company owned by Balinda, purchased the Sloan property.

The Peterson property was the largest and most expensive of the properties, being 518 acres. Golub had an agreement with Peterson that would entitle Golub to a commission for the sale of the Peterson property if Peterson closed on the sale of his property with one of the potential buyers Golub had provided to Peterson by early November 2004.[1] Geraldine was one of the potential buyers provided to Peterson by Golub. In July 2004, Geraldine became a party to a purchase and sale agreement to acquire the Peterson property for $6 million. However, this agreement lapsed in October or November 2004, and the sale was not closed.

In October 2004, Geraldine formed KHD to develop this real estate project. KHD is owned: 7% by Kirk-Hughes & Associates; 51.5% by KS; 3% by Balinda Antoine; and 5% by Richard Polatis.[2] On November 18, 2004, KS granted the Sloan property to KHD by warranty deed. The same day, KHD purportedly executed a deed of trust in favor of KS, covering a portion of the Sloan property, though it is unclear from the record exactly what portion. KHD's warranty deed for the Sloan property was recorded on November 19, 2004, but the deed of trust in favor of KS was not recorded at that time.

In March 2005, Kelly Polatis, a business associate of Geraldine, purchased the Peterson

---

[1] There is some question as to whether there was an extension for this agreement to continue beyond November 2004, but the substance of the extension agreement, if any, is not clear from the record.
[2] It appears from the record that the remaining interests are owned in minor shares by persons who do not appear to be relevant to this case.

property. Polatis then deeded the Peterson property to KHD, either the same day he acquired it or very close in time. Golub believed these were straw-person transactions to deny him his commission on the sale of the Peterson property. In order to recover the lost commission, Golubs sued Geraldine, KHD, Kirk-Hughes & Associates, Polatis, and Peterson in 2007. Geraldine, KHD, and Kirk-Hughes & Associates defended against the action for a year and a half, but on March 11, 2009, Golubs obtained a default judgment in the amount of $941,000 against them. Golubs believed that they were unable to immediately record this judgment because Peterson remained in the action and that the judgment could not be considered final until there was a judgment against all defendants in the action or the court issued an I.R.C.P. 54(b) certificate. For an unknown reason, when the court entered the default judgment, it did not sign the 54(b) certificate. Golub was in the process of seeking a Rule 54(b) certificate to pursue collection against the defaulted defendants when KHD filed for Chapter 11 bankruptcy on April 6, 2009.

Despite the purported deed of trust obligation from KHD to KS, KHD did not list on its bankruptcy forms any secured claims regarding the property allegedly covered by that instrument and did not list KS as a creditor. Additionally, KS did not file a creditor's claim in the bankruptcy proceeding. On September 17, 2010, while KHD's bankruptcy was pending, KS attempted for the first time to record its 2004 deed of trust. Golubs recorded their judgment a few weeks later, after the bankruptcy case was dismissed without discharge.

In early 2013, after a second bankruptcy by KHD was dismissed without discharge, Golubs filed an action for declaratory judgment to establish the priority of their judgment lien over KS' purported prior, unrecorded deed of trust. In response, KS filed a motion to set aside the $941,000 default judgment entered in 2009 and a motion for summary judgment on the 2013 priority action. Golubs also moved for summary judgment on the issue of priority. The district court denied KS' motions and granted Golubs' motion for summary judgment. Following this order, KS moved under I.R.C.P. 59(a) to amend/alter the order. The district court denied the motion and ordered sanctions against KS. KS timely appealed.

## II.
## ISSUES ON APPEAL

1. Whether the district court erred in denying KS' motion to vacate the 2009 default judgment.

2. Whether the district court erred in granting Golubs' motion for summary judgment.

3. Whether the district court abused its discretion in ordering sanctions against KS.

3

4. Whether KS is entitled to attorney fees.

## III.
## ANALYSIS

**A.    Standard of review.**

The standard of review on appeal from the district court's grant of summary judgment is well-settled.

> On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion. Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party. If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review.

*Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014) (internal case citations omitted). "Statutory interpretation is a question of law subject to free review." *J & M Cattle Co., LLC v. Farmers Nat'l. Bank*, 156 Idaho 690, 692, 330 P.3d 1048, 1050 (2014). On discretionary matters, "[a] district court does not abuse its discretion when it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *Agrisource, Inc. v. Johnson*, 156 Idaho 903, 914, 332 P.3d 815, 826 (2014) (internal citations omitted).

**B.    The district court did not err in denying KS' I.R.C.P. 60(b) motion to vacate Golubs' 2009 default judgment.**

**1.    Motion under I.R.C.P. 54(c) and 60(b)(4).**

In the 2013 action for declaratory judgment of priority, KS brought a motion to vacate Golubs' 2009 default judgment against KHD and other defendants, arguing that the judgment was void under I.R.C.P. 54(c) and 60(b)(4) because the district court lacked jurisdiction to award more than the amount prayed for in the 2007 complaint. KS was not one of the named defendants in the 2007 action or a judgment debtor. The district court denied the motion, finding that KS failed to show the court lacked personal jurisdiction over KHD or that the court lacked subject matter jurisdiction to grant the judgment against KHD. We agree with the district court.

It is within the discretion of the district court to decide whether to grant or deny a motion

4

under I.R.C.P. 60(b). *Agrisource*, 156 Idaho at 914, 332 P.3d at 826. Rule 60(b) allows a party to move the court for relief from a final judgment where:

> . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, . . . or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be brought within a reasonable time.

Notwithstanding the timeliness requirements of Rule 60(b), void judgments can be attacked at any time. *See Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009). "Generally, the Court may declare a judgment void only for defects of personal jurisdiction or subject-matter jurisdiction," or where the "court's action amounts to a plain usurpation of power constituting a violation of due process." *Id.* Although if "a default judgment exceeds the demand of the complaint, the excess is void," *Hayes v. Towles*, 95 Idaho 208, 211, 506 P.2d 105, 108 (1973), we have previously stated that "[i]n the sound interest of finality, the concept of void judgment must be narrowly restricted." *Gordon v. Gordon*, 118 Idaho 804, 807, 800 P.2d 1018, 1021 (1990).

Rule 54(c) provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." In *Johnson v. Hartford*, we stated that one of the policy reasons for Rule 54(c) limiting the amount of the judgment is to ensure that a party cannot provide notice to defendants of one amount and then seek a different amount if the defendants decided not to defend, possibly based on the amount pleaded in the complaint. 99 Idaho 134, 138, 578 P.2d 676, 680 (1978). The amount awarded upon default will be the amount "actually demanded somewhere in the complaint *when considered in its entirety*." *Id.* at 139, 578 P.2d at 681 (emphasis added). The complaint should be sufficient in its prayer for relief to give notice to the defendants as to the amount sought so the defendants can decide whether the action is worth defending.

Here, the district court determined that when considered in its entirety, the 2007 complaint shows Golubs claimed they were wrongfully and unlawfully deprived of $941,000 in commission, plus interest, and therefore the default judgment did not differ from the relief sought in the complaint. KS argues the default judgment is void under Rule 60(b)(4) because the amount of the judgment was excessive under Rule 54(c), arguing: (1) the $941,000 amount is mentioned in the complaint only in reference to Peterson's failure to pay that amount due under their listing agreement, and Golub does not allege any other party should be liable for this amount; (2) the

complaint did not specify an interest rate requested for pre-judgment interest and the 12% rate ordered is higher than the default rate of 5%; and (3) the complaint did not request post-judgment interest, which was awarded by the district court. KS' arguments are unpersuasive.

The complaint gave sufficient notice to the defendants that Golubs sought the $941,000 commission owing on the sale of the Peterson property. Golubs' 2007 complaint states that Golub was not paid "the $941,000 commission under the Listing Agreement." Although Golubs stated that "*Peterson* did not pay Golub the $941,000 commission," they did not limit their prayer for relief for that amount to payment from Peterson. (Emphasis added). Golubs assert that each named defendant was responsible for the loss of that commission. They stated "Defendants were aware of the Listing Agreement between Petersons and Golub" and that "Defendants intentionally interfered with the contractual relationships and expectations of Golub when they acted to frustrate and circumvent the purpose of the Listing Agreement." In addition to the preceding statement, there are several other statements in the complaint showing that Golubs claimed each named defendant to be responsible for the lost commission. Indeed, Golubs' complaint alleges that Polatis represented to Peterson that the Golub listing agreement was illegal, that Peterson would benefit by selling the property to him, that Peterson was aware Polatis would ultimately transfer the property to Geraldine Kirk-Hughes, that Polatis entered into a written agreement with Peterson to purchase the property on March 1, 2005, and took title three days later, and that Polatis transferred title to KHD on March 11, 2005.

Notably, this was not a case where the defendants never appeared to defend. There was discovery in this case and a great deal of litigation among the parties before entry of the default judgment. Throughout that litigation, Golubs always maintained entitlement to at least the $941,000 lost commission. Ultimately, when considered in its entirety, the complaint put each defendant on notice that Golubs were claiming the $941,000 lost commission and that each defendant was liable for that amount.

KS' interest arguments make little sense. Golubs' complaint specifically prayed for pre-judgment interest on the commission. The district court granted pre-judgment interest on the $941,000 commission beginning March 11, 2005, the date that KHD acquired title from Polatis, which would likely be the date the commission became payable. The court acted reasonably in doing so. Idaho Code section 28-22-104(1)(2) provides for allowance of interest at the rate of 12% per annum on money after the same becomes due. Where a liquidated amount comes due at

6

a specific date, the court may award pre-judgment interest at the rate of 12% on that amount. That is what occurred here. And, of course the judgment properly bore interest at the legal rate from the date of entry pursuant to the provisions of Idaho Code section 28-22-104(2). There is absolutely no requirement that a plaintiff ask for post-judgment interest in his or her complaint.

Because the amount of the default judgment was not more than was prayed for in the complaint, and because both pre-judgment and post-judgment interest are warranted under the circumstances, we hold that the default judgment complied with Rule 54(c). Therefore, KS' arguments that the judgment should be vacated as void under Rule 60(b)(4) are without merit.[3]

### 2. Motion under Rule 60(b)(6).

KS also argues under Rule 60(b)(6) that the district court should have vacated the 2009 default judgment because the submissions to the court in support of that default judgment did not comply with I.R.C.P. 55(b)(1). KS argues Golubs did not comply with Rule 55(b)(1) because: (1) Golubs submitted an affidavit that sought relief only from Kelly Polatis and did not submit an affidavit seeking relief from any other defendant; (2) the submitted affidavit does not set out the means by which the $941,000 amount was reached; and (3) the affidavit does not include an instrument evidencing the claim. These arguments must fail.

Rule 60(b)(6) allows a court to grant relief from a judgment when there is "any other reason justifying relief from the operation of the judgment" but only where the "party making the Rule 60(b)(6) motion demonstrate[s] unique and compelling circumstances justifying relief." *In re estate of Bagley*, 117 Idaho 1091, 1094, 793 P.2d 1263, 1266 (Ct. App. 1990). Rule 55(b)(1) provides:

> [w]hen the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the court or the clerk thereof, upon request of the plaintiff, and upon the filing of an affidavit of the amount due showing the method of computation, together with any original instrument evidencing the claim unless otherwise permitted by the court, shall enter judgment for that amount and costs against the defendant.

First, although the affidavit Golubs submitted with their motion for default judgment is

---

[3] KS also argues under Rule 60(b)(5) that the 2009 default judgment should be vacated because it is a prospective judgment that is no longer equitable to enforce. It argues the judgment is prospective because there is some evidence in the record that Golub had agreements with third persons to pay them part of Golub's commission on the sale of the Peterson property. However, none of the persons KS claims are entitled to part of the commission are mentioned in Golub's Listing Agreement with Peterson, and none are included as parties in this case. Any side-agreements Golub may have had with third persons are irrelevant to resolving the dispute in this case and determining the amount defendants owed Golub under the listing agreement. Therefore, we need not further analyze this argument.

titled "Affidavit of Alan Golub in Support of Motion for Default Judgment *Against Kelly Polatis*," the substance of the affidavit concerns all the defendants, and the title of a document does not rigidly control its effect. (Emphasis added). In the affidavit, Golub states the circumstances establishing liability of multiple defendants, finishing by swearing that "[n]either Peterson nor Kirk-Hughes paid my realtor fees." In fact, with the exception of the title of the document, the affidavit is without reference to Kelly Polatis. It appears the title of the affidavit is simply a shorthand way of referring to the actual motion for default judgment, which is titled "Plaintiffs' Motion and Memorandum for Default Judgment Re: Defendants Polatis and Kirk-Hughes et al." In the body of the motion for default judgment, the first sentence reads: "Pursuant to I.R.C.P. 55(b)(1) Plaintiffs move the Court for Default Judgment against Defendants Kelly Polatis ('Polatis'), Geraldine Kirk-Hughes, Peter Sampson, [etc.]." Notably, both the title of the motion and the first sentence of the motion state Polatis' name first. Given that the substance of the affidavit applies to multiple defendants and the other documents relevant to the motion list Polatis' name first, it is most likely that the affidavit in support of default judgment simply listed Polatis in the title as a shorthand way of referring to all the parties but may have incidentally omitted "et al" after "Polatis." Regardless of whether the others' names were left off incidentally, it is clear the affidavit swore to the claim and amount due from all named defendants.

Second, the affidavit sets out exactly how Golubs arrived at the $941,000 figure they sought. Golub swears that, under his agreement, he was entitled to 100% of the amount of the sale of the property between $4 million and $4.4 million. This means if the property sold for more than $4.4 million, Golub was entitled to $400,000. He also swears he was entitled to 50% of the sale price that exceeded $4.4 million. The amount by which the actual sale price of $5,482,000 exceeded $4.4 million is $1,082,000. So, Golub was entitled to an additional $541,000 (50% of the $1,082,000 amount over $4.4 million). The $541,000 and the $400,000 he was owed under the agreement combine to equal the $941,000 amount Golub sought. Therefore, KS fails in its argument that the affidavit does not set out the means by which the $941,000 was computed.

Third, KS argues "Golub's affidavit does not contain a document 'evidencing a claim,' it contains a hand-written document that does not even contain the $941,000 figure." Despite this argument, the document attached by Golub was the listing agreement between Peterson and Golub, and the terms of that agreement provide the method of calculating the $941,000 amount

Golub sought. It would be impossible for the writing to have contained the $941,000 figure since the parties' method of calculating the commission was based on the sale price of the property, an amount that could not be known until the sale was closed. KS fails to explain why this document does not meet the requirements of Rule 55(b)(1). Because Golubs' motion and affidavit for default judgment did comply with Rule 55(b)(1), KS' motion to vacate under Rule 60(b)(6) is without merit.[4]

**C.     The district court did not err in granting the Golubs' motion for summary judgment.**

**1.     The requirements of good faith and giving of valuable consideration do not apply to judgment lienholders under Idaho Code section 55-606.**

KS claims it has a priority claim to the property in question because Golubs perfected their encumbrance while having actual and/or constructive knowledge of KS' prior interest, meaning Golubs could not take as good faith encumbrancers under Idaho Code section 55-606. In response, Golubs propose an interpretation of section 55-606 in which the requirements of good faith and valuable consideration do not apply to one who acquires a valid judgment lien. Idaho Code section 55-606, which governs priorities of competing claims to interests in real property, currently provides:

> Every grant or conveyance of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or encumbrancer, who in good faith, and for a valuable consideration, acquires a title or lien by an instrument <u>or valid judgment lien</u> that is first duly recorded.

I.C. § 55-606 (emphasis added).

KS argues the plain reading of this statute means that one who is conveyed an interest in real property (whether or not he/she records that interest) has priority against anyone else with a subsequent claim to that property except one who, in good faith and for valuable consideration, subsequently acquires an interest in that property by either an instrument or a valid judgment and

---

[4] The district court did not address the substance of KS' motion to vacate under Rule 60(b)(6), instead denying the motion as untimely. We do not today decide the timeliness issue. Instead we hold that the Rule 60(b)(6) motion is without merit, meaning that any error that may or may not have occurred in finding the motion untimely was harmless.

 KS makes a final attempt to challenge the amount of the judgment by arguing Golubs received a double recovery from (1) a settlement between Golubs and Peterson and (2) Golubs' judgment for the full amount sought in the complaint. At the trial court, KS moved to compel discovery of the amount of the Peterson settlement, which motion was determined by the trial court to be moot in light of the rest of its decision. Because this is not an argument that the judgment is void for the court's lack of personal or subject-matter jurisdiction, we find that KS, as a non-party to the judgment, lacks standing to challenge the amount of the judgment.

records before the first interest is recorded. Golubs argue the plain reading of this statute means that one who is conveyed an interest in real property has priority against anyone claiming a subsequent right to the property except *either* (1) one who, in good faith and for valuable consideration, subsequently acquires an interest in that property by instrument and records that interest before the first interest is recorded, <u>or</u> (2) one who subsequently acquires a lien on that property by valid judgment and recordation of that judgment before the first interest is recorded.

The district court stated that "I.C. § 55-606 provides that a grant or conveyance of an estate in real property is conclusive against the grantor, and every other person subsequently claiming under him, except an encumbrancer *who acquires a lien by valid judgment that is first duly recorded*." (Emphasis added). Thus, though it did not expressly state so, by not addressing the issues of good faith and payment of valuable consideration by the subsequent interest holder, the district court appears to have accepted Golubs' interpretation of the statute. This Court has not had occasion, since a 1989 amendment, to construe the statutory language in question here.

Prior to 1989, the statute read exactly the same except the phrase "or valid judgment lien," emphasized above, did not appear. 1989 Idaho Sess. Laws ch. 107, § 1, pp. 247–48. The question of whether a judgment lienholder must acquire his/her interest in good faith and for valuable consideration in order to have priority under Section 55-606 is a matter of first impression for this Court. We hold that the requirements of good faith and valuable consideration do not apply to one who acquired a lien by means of a valid judgment.

In *State v. Yzaguirre* we stated the law regarding interpretation of statutes applicable to this case:

> The objective of statutory interpretation is to give effect to legislative intent. Because the best guide to legislative intent is the words of the statute itself, the interpretation of a statute must begin with the literal words of the statute. Where the statutory language is unambiguous, the Court does not construe it but simply follows the law as written. . . . In determining its ordinary meaning effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.

144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007) (internal citations omitted).

The issue in interpreting the statute is whether a "valid judgment lien" must have been acquired "in good faith, and for valuable consideration." A judgment lien is obtained by the act of *recording* a judgment,[5] not by the act of *obtaining* a judgment. Thus, there is no issue of

---

[5] Idaho Code section 10-1110 provides insofar as is relevant:

whether one could or should give valuable consideration for obtaining the judgment. The issue is whether a judgment creditor must *record* a judgment "in good faith, and for valuable consideration" in order to take priority over a prior unrecorded grant or conveyance of real estate.

Because the good-faith and valuable-consideration requirements are connected by the conjunction "and," either they both apply to acquiring a judgment lien or neither applies to acquiring the lien. There is no requirement that a judgment creditor give valuable consideration in order to obtain a judgment lien. Obtaining the lien by recording the judgment is simply a step in seeking to enforce payment of the judgment. Because the valuable-consideration requirement obviously does not apply to the recording of a judgment in order to acquire a judgment lien, neither does the good-faith requirement.

If we were to accept KS' interpretation of Section 55-606, the second instance of the word "lien" would be superfluous and redundant. The Legislature chose to use the word "lien" twice, indicating there were two clauses, and two classes of creditors, it intended to keep separate. If the Legislature intended KS' interpretation, the statute would merely have provided that a subsequent encumbrancer has priority if he "in good faith, and for a valuable consideration, acquires a title or lien by an instrument or valid *judgment* that is first duly recorded." Instead the Legislature provided that the subsequent encumbrancer has priority if he "in good faith, and for a valuable consideration, acquires a title or lien by an instrument or valid judgment <u>lien</u> that is first duly recorded." I.C. § 55-606 (emphasis added). If the two protected classes of subsequent encumbrancers are to be read as one, as KS argues, this reading would state that one acquires a lien by means of a judgment *lien*, which is inaccurate. One acquires a lien by means of a recorded judgment, not by means of a judgment *lien*. *See* I.C. § 10-1110.

KS contends that the district court's application of Section 55-606 gives judgment lienholders a preferred position over other creditors. However, the only way for a subsequent judgment lienholder to obtain priority over prior interests is if the subsequent judgment "is *first*

---

A transcript or abstract of any judgment or decree of any court of this state or any court of the United States the enforcement of which has not been stayed as provided by law, if rendered within this state, certified by the clerk having custody thereof, may be recorded with the recorder of any county of this state, who shall immediately record and docket the same as by law provided, and from the time of such recording, and not before, the judgment so recorded becomes a lien upon all real property of the judgment debtor in the county, not exempt from execution, owned by him at the time or acquired afterwards at any time prior to the expiration of the lien. . . .

duly recorded." This final phrase in the statute, "that is first duly recorded," must apply to both judgment lienholders and those who acquired their lien in an instrument with good faith and for valuable consideration. If this last phrase did not apply, the race component of the race-notice statute would be lost because there would be no consideration of who recorded first. In this case, had KS simply recorded its deed of trust when it was executed, there would likely be no question that it had priority over Golubs' judgment lien. This is true under either party's interpretation of the statute because, even though Golubs met the requirement of having a "valid judgment lien," they would not have met the requirement of that judgment lien being "*first* duly recorded." Anyone with a prior, validly recorded interest will maintain his/her priority over any subsequent judgment lienholder.

Because we hold that the good-faith and valuable-consideration requirements of Section 55-606 do not apply to valid judgment liens and because Golubs' judgment was properly recorded prior to the recording of KS' deed of trust, the district court properly held that Golubs' lien had priority.

**2.      Golubs' default judgment did not require a Rule 54(b) certificate to be valid.**

KS argues Golubs' interest does not have priority because the recorded default judgment is not a "valid judgment lien" under Section 55-606. KS argues that Golubs' default judgment was not a valid judgment lien under Section 55-606 because, without a signed Rule 54(b) certificate, the default judgment was not a "final judgment." This argument is without merit. The lack of a Rule 54(b) certificate is irrelevant to the validity of Golubs' judgment, here. In its brief, KS states the law relating to final judgments as follows: "A final judgment must be final as to all parties and all claims *and* contain a signed I.R.C.P. 54(b) certificate." (Emphasis added). This is an incomplete reading of Rule 54. Rule 54(a) provides that "[a] judgment is final if *either* it has been certified as final pursuant to subsection (b)(1) of this rule *or* judgment has been entered on all claims for relief except costs and fees, asserted by or against all parties in the action." (Emphasis added).

In this case, when the district court entered the default judgment in March 2009, the claims against all but one of the named defendants were resolved. Because Golubs' claim against Peterson remained unresolved at the time, Golubs would have required a Rule 54(b) certificate to enforce their judgment then. *See* I.R.C.P. 54(b). The judgment contained such a certificate, but, for an unknown reason, the district court failed to sign it. KHD then went into bankruptcy, with

12

the automatic stay preventing any collection efforts by Golubs. During the bankruptcy stay, in August 2009, the district court entered an order, dismissing the remaining claims against Peterson. Because the automatic stay was still in effect in KHD's bankruptcy action, the judgment against KHD lacked finality for appeal purposes and the district court, therefore, issued a Rule 54(b) certificate with respect to all the defendants in Golubs' case except KHD. KS does not argue or cite any authority for the proposition that the bankruptcy stay somehow invalidated the default judgment that was entered against KHD prior to the bankruptcy. Therefore, after the bankruptcy was dismissed in October 2010, that default judgment went back into enforceable effect. Because there were no other defendants and no other claims at that point, the judgment became final under Rule 54(a), and did not require any kind of a certificate. KHD's argument is therefore unavailing.

### 3. The district court did not err in finding that KS' deed of trust was not properly acknowledged.

The district court found that KS did not properly acknowledge its attempted recordation of its deed of trust. KS argues the district court erred in deciding the deed of trust was not validly recorded because: (1) the deed of trust was actually recorded by the Kootenai County Recorder's Office even if it contained defects under Idaho law; and (2) the deed of trust was properly acknowledged under Nevada law where the instrument was executed and Idaho law recognizes validly acknowledged foreign instruments. Neither of these arguments is persuasive.

KS first cites *Mollendorf v. Derry*, 95 Idaho 1, 501 P.2d 199 (1972), and states, "Under *Mollendorf*[,] deeds lacking both an acknowledgment and containing deficiencies in the legal description have not been voided. . . . Thus, even if the Kirk-Scott Deed of Trust did not comply with Idaho law its supposed deficiencies do not render it void." KS appears to misunderstand the district court's decision with respect to KS' deed of trust. The district court did not hold that the deed of trust was void; it held that Golubs' "judgment lien has priority over K-S's deed of trust[,] . . . and K-S's *September 17, 2010, recording* of its deed of trust is void." (Emphasis added). Additionally, Golubs do not appear to argue that the deed of trust was void, merely that the recording of that deed of trust was void, meaning it cannot impart constructive notice of the encumbrance. *Mollendorf*, which KS cites, does not involve an attempted recording being challenged. It involves a challenge to the validity *of a deed* based on a lack of acknowledgment, in response to which, this Court stated, Idaho law does "not require such an acknowledgment, *except for the purpose of recording*." 95 Idaho at 4, 501 P.2d at 202 (emphasis added).

13

Therefore, this case actually supports the fact that a valid recording needs a valid acknowledgment.

Finally, KS states that Idaho Code section 55-805 recognizes as validly acknowledged in Idaho, deeds that are acknowledged under the laws of foreign jurisdictions. Although in its briefing KS states in conclusory fashion that its deed of trust was validly acknowledged in Nevada where the deed of trust was executed, it provides no application of Nevada law to show the deed of trust complied with Nevada law for acknowledgement. Additionally, KS conceded at oral argument before this Court that there was no proper acknowledgment. Because KS has not shown the district court erred in finding that KS' deed of trust was not properly acknowledged, and was therefore not validly recorded, we uphold the trial court's decision on this matter.

Here, Golubs validly recorded their interest before KS. Therefore, Golubs simply have priority over any prior, unrecorded interests, including KS' deed of trust. In light of our interpretation of Section 55-606, it is unnecessary to analyze any issues regarding what knowledge Golubs may or may not have had with respect to KS' deed of trust. Because there are no disputed facts with respect to who duly recorded first, the trial court did not err in ordering that the Golubs were entitled to judgment as a matter of law.[6]

## D. The district court did not abuse its discretion in ordering sanctions against KS.

Following the district court's order granting summary judgment to Golubs and denying KS' motion to dismiss and Rule 60(b) motion to vacate the default judgment, KS filed a motion to amend/alter the court's decision, under I.R.C.P. 59(a)(1), (6) & (7). The district court denied the motion to amend/alter the judgment and sanctioned KS under I.R.C.P. 11(a)(1) for bringing the motion. The court denied the motion to amend/alter because (1) Rule 59(a) applies only in a case where there has been a trial, and (2) KS' motion was, in substance, a motion to reconsider the court's decision on KS' Rule 60(b) motion to vacate the 2009 default judgment, which is expressly prohibited by Rule 11(a)(2)(B). In sanctioning KS, the court concluded that

> Kirk-Scott's and Kirk-Hughes' Motion to Amend/Alter Judgment and supporting briefing were not (1) grounded in fact, (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, (3) were interposed for the improper purpose of unnecessary delay and (4) did cause needless increases in the cost of litigation.

---

[6] KS also argues the district court erred in finding KS' recordation of its deed of trust violated the automatic bankruptcy stay because KS argues Golubs lacked standing to challenge a stay violation. Because we agree with the district court that the recordation of the deed of trust was not valid because it was not properly acknowledged, it is unnecessary to address the issue regarding the validity of the recordation as affected by the bankruptcy stay.

14

KS argues the court erred in ordering sanctions against KS for three reasons: (1) KS' assertion that a summary judgment motion is equivalent to a directed verdict is warranted by both existing law and a good faith argument for the extension thereof; (2) KS' arguments in its motion fell within the scope of Rule 59, not Rule 60 as the court decided; and (3) the court's impartiality is in question.

Our standard when reviewing the trial court's imposition of sanctions pursuant to Rule 11 is one of abuse of discretion. *Campbell v. Kildew*, 141 Idaho 640, 649–50, 115 P.3d 731, 740–41 (2005). Rule 11(a)(1) provides that, when appearing on a filing with the court,

> [t]he signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

I.R.C.P. 11(a)(1). If a filing is signed in violation of this rule,

> the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Id.* In general, the question of whether to issue sanctions falls on "whether an attorney made a proper investigation into the facts and legal theories before signing and filing a document." *Campbell*, 141 Idaho at 650, 115 P.3d at 741. Rule 59, under which KS claims to have brought its motion to amend/alter, provides in relevant part:

> (a) New Trial—Amendment of Judgment—Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
>
>> 1. Irregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.
>>
>> . . .
>>
>> 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.
>>
>> 7. Error in law, occurring at trial.

Rule 11(a)(2)(B) provides, in relevant part:

15

A motion for reconsideration of any order of the trial court made after entry of final judgment may be filed within fourteen (14) days from the entry of such order; provided, there shall be no motion for reconsideration of an order of the trial court entered on any motion filed under . . . 60(b).

Here, the district court ordered sanctions against KS under Rule 11(a)(1). The court cited *Slack v. Anderson*, 140 Idaho 38, 89 P.3d 878 (2004), correctly recognizing that sanctions under Rule 11(a)(1) are discretionary.

The district court also acted within the scope of its discretion and consistently with the applicable legal principles. In its Decision and Order Re: Sanctions, the district court first concluded that there had been no trial in this case and that KS' argument that a summary judgment determination is equivalent to a directed verdict at trial "is not warranted by existing law or a good faith argument for the extension of existing law." By its plain language, Rule 59(a) appears to apply only to cases where there has been a trial, and the district court noted this fact. In its initial motion to amend/alter and supporting memorandum, KS provided no authority or argument as to why Rule 59(a) should apply to the court's rulings on a motion for summary judgment, a motion to dismiss, or a Rule 60(b) motion to vacate. After Golubs raised this problem in their response to KS' motion, KS' reply brief on its motion to amend/alter stated: "Courts consistently hold that 'a summary judgment motion is like a trial motion for a directed verdict and that "genuine" allows some quantitative determination of the sufficiency of the evidence.'" (Quoting *McFeely v. United States*, 700 F. Supp. 414, 417 (S.D. Ind. 1988)). Despite its claim that courts consistently make this holding, *McFeely* is the only authority KS cited to support its proposition. At oral argument on this matter, the district court asked KS to address any Idaho authority to support its position that the equivalent of a trial had taken place, making Rule 59(a) applicable. In response to the court's inquiry on Idaho authority, the following exchange took place:

Mr. Crotty [(KS' counsel)]: As to your question, your honor. No, I have not found any Idaho authority. I found analogous authority that I cited in the brief.

Court: The Southern District of Indiana case?

Mr. Crotty: Yes, your Honor. There's additional authority from Washington. But, no, I have not found any from Idaho.

In its Decision Re: Sanctions, the district court stated that of all the Idaho case law addressing Rule 59(a) none of it applies to a summary judgment. It also found the statement KS cited from *McFeely* (from the Southern District of Indiana) was taken out of context and "does not stand for

16

the proposition asserted, i.e., that a summary judgment decision is the equivalent of a trial."

On appeal, KS cites several other cases from non-controlling jurisdictions. These sources were not provided to the district court to consider in making its decision, so we will not consider the applicability of those cases in reviewing whether the district court abused its discretion.

Additionally, for the first time on appeal, KS changes its position that there is no relevant Idaho authority on the matter, citing two Idaho cases on appeal. In the first, *Straub v. Smith*, 145 Idaho 65, 70–71, 175 P.3d 754, 759–60 (2007), the Court reversed the trial court's decision that Rule 59**(e)** did not provide a basis to amend a judgment resulting from a stipulated motion to dismiss prior to trial. The case does not anywhere discuss Rule 59**(a)**, under which KS claims to have brought its motion. KS secondly cites to a footnote in *Johnston v. Pascoe* that states: "Although the motion was denominated as one for 'New Trial' no trial was had, the case being resolved under summary judgment proceedings. However, it could properly be considered as a motion in amendment of judgment, mentioned in I.R.C.P. 59(a)." 100 Idaho 414, 419 n.4, 599 P.2d 985, 990 n.4 (1979). Whether a summary judgment determination was equivalent to a trial was not before the Court in *Johnston*, and the court resolved the issue before it by deciding the motion in the case was untimely. Therefore, the *Johnston* Court's footnote language cited by KS is not binding on this Court. Because these two Idaho cases are not on point with the issue before the Court, and because they were not presented to the trial court where KS took the position there was no applicable Idaho authority on the matter, KS fails in its argument with respect to these two Idaho cases.

In addition to the fact that Rule 59(a) does not apply where there has not been a trial, the district court found that, with its Rule 59(a) motion to amend/alter the 2013 judgment, KS was in reality requesting that the district court reconsider its ruling on KS' Rule 60(b) motion to vacate the 2009 default judgment. KS argues its motion could not have been a motion for reconsideration of its earlier Rule 60(b) arguments because KS withdrew the part of its motion to amend/alter that applied to Rule 60(b)(4) and the district court never considered the substance of KS' Rule 60(b)(5) & (6) arguments, so it is not possible that KS asked the court to **re**consider those arguments.

Rule 11(a)(2)(B) prohibits the filing of a motion to reconsider an order issued on a Rule 60(b) motion. Here, in support of its motion to amend/alter, KS filed a sixteen-page opening memorandum. Under the guise of a Rule 59(a) motion, the vast majority of this memorandum

asked the district court to reconsider KS' arguments that the Golubs' 2009 default judgment should have been vacated under Rule 60(b). The first argument section of KS' memorandum argued that the district court erred in finding that KS had the burden of proving the timeliness of its Rule 60(b) motion. The next section argued the district court erred in finding the Rule 60(b) motion was not brought timely. The next section argued that the district court did not sufficiently address KS' Rule 60(b)(5) & (6) arguments—because the court found them to be untimely. KS argues on appeal that it was not asking the district court to reconsider its Rule 60(b) motion. Although KS is careful not to use the word "reconsider" in its motion to amend/alter, statements such as, "[t]he Court should [] amend its judgment, by vacating the 2009 default judgment, under I.R.C.P. 60(b)(4)(5) & (6)," make it clear that KS was asking the district court to reconsider its decision on the Rule 60(b) motion to vacate. This request of the court to reconsider its order on the Rule 60(b) motion is clearly prohibited by Rule 11(a)(2)(B). The district court stated,

> this Court is left with the abiding belief that the defendants requested this Court to reconsider its August 9, 2013, order denying the defendants' Rule 60(b) motions. Additionally this Court concludes that the defendants' attempt to skirt around Rule 11(a)(2)(B)'s prohibition against reconsideration of Rule 60(b) orders is the exact litigative misconduct that Rule 11 sanctions was intended to address.

As the district court found, a reasonable inquiry by KS would have revealed that it was prohibited from bringing such a motion for reconsideration of its Rule 60(b) motion.[7] These arguments, prohibited by Rule 11(a)(2)(B), came in the form of a number of documents signed by KS' attorney. The district court found KS "filed its Motion to Amend/Alter Judgment . . . and a supporting brief. Both were signed by Kirk-Scott's counsel Mr. Crotty." KS also "filed its reply brief; signed by Mr. Crotty." In summary, based on the authority provided to the trial court in deciding the motion, KS' argument that a summary judgment disposition is equivalent to a trial was not well-grounded in fact, existing law, or a good-faith argument for extension of the law. Further, it was clear that KS was asking for the court to reconsider its order on the Rule 60(b) motion. A reasonable inquiry should have led KS to realize these filings were inappropriate. Nevertheless, KS signed and submitted the inappropriate filings to the court. Therefore, in sanctioning KS the district court acted within the scope of its Rule 11(a)(1) discretion and consistently with applicable legal theories.

Finally, the district court also reached its decision by an exercise of reason. The court

---

[7] And, in fact, Golubs warned KS that it was bringing the motion in violation of Rule 11(a)(2)(B) and gave KS a chance to withdraw the motion.

issued a well-reasoned, eight-page decision, concluding that it was ordering these sanctions upon its own initiative because it found:

> Kirk-Scott's and Kirk-Hughes' Motion to Amend/Alter Judgment and supporting briefing were not (1) grounded in fact, (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, (3) were interposed for the improper purpose of unnecessary delay and (4) did cause needless increases in the cost of litigation.

The court analyzed its power to order sanctions, the standard to apply when doing so, and the specific conduct that made sanctions appropriate here. Therefore, it reached its decision by an exercise of reason. Because the district court in this case (1) correctly recognized the order of sanctions as a matter within its discretion, (2) acted within the scope of the court's discretion and consistently with applicable legal theories, and (3) reached its decision by an exercise of reason, we hold that the district court did not abuse its discretion in ordering sanctions against KS.

KS' contention that the district court was biased against KS is unwarranted and unsupported. KS does not provide any facts, authority or persuasive argument on this matter. It merely points out what it believes to be weaknesses in Golubs' case and suggests that the court must not be impartial because it found in favor of Golubs despite these weaknesses. We will not entertain such a groundless argument.

**E.     KS is not entitled to attorney fees under Idaho Code section 12-120(3) or 12-121.**

Both Idaho Code sections 12-120(3) and 12-121 allow attorney fees only to the prevailing party. Because we rule against KS today, it is not entitled to attorney fees.

## IV.
## CONCLUSION

We affirm the district court in all respects. Costs to Golubs.


Chief Justice BURDICK, and Justices EISMANN and HORTON, and Justice Pro Tem WALTERS CONCUR.

19