# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48954-2021

SCOTT PINKHAM, an individual; and NATALIE PINKHAM, an individual,

    Plaintiff-Counterdefendants-Respondents,

v.

DAVID PLATE, an individual; THREE PEAKS HOMES, LLC, an Idaho limited liability company; REBECCAH JENSEN, an individual,

    Defendants-Counterclaimants-Appellants,

and

LEGACY MANAGEMENT ENTERPRISES, LLC, a Wyoming limited liability company,

    Defendants-Counterclaimants,

and

DOUG HALL, an individual; REBEL CREW CONSTRUCTION, LLC, a Wyoming limited liability company,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2024 Term

Opinion filed: June 28, 2024

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION, THE OPINION DATED NOVEMBER 28, 2023, IS WITHDRAWN

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge.

The district court's default judgment is <u>affirmed</u>.

Hawley, Troxell, Ennis & Hawley, LLP, Pocatello, for Appellants. John A. Bailey argued.

Parsons, Behle & Latimer, Idaho Falls, for Respondents. John E. Cutler argued.

---

1

ZAHN, Justice.

This case concerns the entry of a default judgment in favor of Scott and Natalie Pinkham for $647,311.95 against Three Peaks Homes, LLC, David Plate, and Rebeccah Jensen (collectively "Appellants") jointly and severally. Appellants moved to set aside both the entry of default and default judgment, but the district court denied both motions.

On appeal, Appellants contend that the district court abused its discretion by not setting aside the default because the default should not have been entered in the first place or because there was good cause to set aside the default. Appellants also argue that they are entitled to relief from the default judgment because the district court entered it without proper authority or evidentiary support. On November 28, 2023, this Court released its original decision in this appeal. We thereafter granted the Pinkhams' petition for rehearing. For the reasons discussed below, we affirm the district court's decision denying the motion to set aside the default and default judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Pinkhams signed a contract with Three Peaks Homes, LLC, for the construction of a custom home at a fixed price of $1,000,000. Construction did not go as planned and the contract was terminated before the home was completed. Three Peaks subsequently filed two $600,000 mechanics' liens against the Pinkhams' home. The Pinkhams then filed a complaint against David Plate, Rebeccah Jensen, Three Peaks, Rebel Crew Construction, LLC, and Legacy Management Enterprises, LLC, asserting several causes of action: (1) breach of contract; (2) breach of implied warranty of workmanship; (3) fraud; (4) replevin; (5); trespass; (6) slander of title; (7) quiet title; and (8) unjust enrichment. The Pinkhams later filed an amended complaint that added claims for injunctive relief and piercing the corporate veil. Neither the complaint nor the amended complaint specified the amount of monetary damages sought, but instead prayed for "an award of damages to Plaintiffs in [sic] amount to be determined at trial[.]" Additionally, the Pinkhams filed notices of lis pendens against two other properties owned by Legacy on the basis that Three Peaks used materials and labor that the Pinkhams paid for in projects on those properties.

Plate and Jensen appear to own both Three Peaks and Legacy, although the record is unclear as to their exact ownership interests or the management structure of those businesses. Plate, Jensen, Three Peaks, and Legacy were represented by the same attorney, Lance Schuster. Plate, Jensen, and Three Peaks filed a combined answer and counterclaim, while Legacy filed a separate answer and counterclaim. Three Peaks asserted that the Pinkhams breached the construction

2

contract and sought to foreclose on its liens on the Pinkhams' home. Legacy's counterclaim asserted causes of action for abuse of process and slander of title and sought to have the lis pendens removed from the public record.

Legacy and the Pinkhams filed cross motions for partial summary judgment. The Pinkhams' motion sought a judgment ordering the removal of Three Peaks' mechanics' liens filed against the Pinkhams' home. The Pinkhams' motion was supported by a declaration from Scott Pinkham, which included an attachment showing all the checks and bank draws used to pay for Three Peaks' work, totaling $648,296.02. The summary judgment decision is not included in the record on appeal, but based on other parts of the record, it appears the district court denied the Pinkhams' motion.

On November 13, 2020, Schuster filed a motion for leave to withdraw as counsel for Plate, Jensen, Three Peaks, and Legacy under Idaho Rule of Civil Procedure 11.3(b). He asserted his clients had failed to communicate or provide requested information and that neither Three Peaks nor Legacy had met their financial obligations to him. In his motion, Schuster provided Appellants' last known addresses. Schuster provided the same address for all four parties.

On December 10, 2020, the district court entered an order granting Schuster's motion for leave to withdraw. The order directed Appellants to "appoint another attorney to appear on their behalf, or to appear in person by filing a written notice with the [c]ourt stating how they will represent themselves" within twenty-one days of service of the order. The order also required that Schuster serve Appellants, by certified mail, a copy of the order at Appellants' last known address. Finally, the order stated,

> should [Appellants] fail to file and serve a written appearance in this action either in person or through a newly appointed attorney within twenty-one (21) days of the date of service of this Order, such failure shall be sufficient grounds for entry of judgment against them, without further notice, or dismissal of this action.

That same day, the court clerk served a copy of the withdrawal order on Appellants via first class mail to the last known address provided by Schuster. On December 11, Schuster served two copies of the order on Appellants, one via certified mail and the other via first class mail, to the same last known address.

On December 23, 2020, the district court received a letter from Jensen and Plate that stated,

> Three Peaks Homes, David Plate and Rebeccah Jensen have heard that our lawyer will no longer be representing us. We haven't received any official notification of

3

this as of yet. We are requesting additional time to find representation as we haven't been able to find any due to the holidays.

The return address on the letter was the same last known address provided by Schuster, and the same address to which the clerk and Schuster mailed copies of the order granting the motion to withdraw. The district court did not take any action in response to Appellants' letter.

On January 6, 2021, the Pinkhams moved for the entry of default and default judgment against Appellants and for dismissal of Appellants' counterclaims with prejudice. The Pinkhams asserted default judgment was proper under Rule 11.3 because Appellants failed to file "a notice of appearance of a new attorney or a notice of self-representation . . . within 21 days" of service of the district court's December 10 order. The Pinkhams acknowledged Appellants' December 23 letter but argued the letter did not constitute a written appearance as required by Rule 11.3. Neither the Pinkhams' motion nor their memorandum in support of the motion identified the amount of damages sought or included any documentation supporting an award of damages. The motion stated it was supported by Schuster's declaration confirming he served two copies of the order on Appellants, and "the pleadings and records on file herein." The Pinkhams' counsel served the motion on Appellants on January 6 via first class mail to the last known address identified by Schuster.

From the record, it appears that the Pinkhams also submitted a proposed order granting their motion and a proposed default judgment to the district court. The record does not indicate whether the Pinkhams served copies of the proposed order and judgment on Appellants. The proposed default judgment included an award of damages in the amount of $647,331.95. However, the Pinkhams submitted no memorandum, declarations, evidence, or argument to support the damage award included in the proposed default judgment.

Five days later, on January 11, 2021, the district court granted the Pinkhams' motion without a hearing. The district court found that Appellants had not filed a notice of appearance or self-representation as required by Rule 11.3 and the district court's December 10 order. The district court entered default against Appellants and ordered that judgment be entered by default against Appellants "in accordance with the relief sought in Plaintiffs' Amended Complaint, as set forth in the Judgment." The district court signed the proposed order and default judgment submitted by the Pinkhams without making any changes to either document. The default judgment stated:

> Defendants Three Peaks Homes LLC, David Plate, Rebecca [sic] Jensen, Legacy Management Enterprises, LLC[,] and Rebel Crew Construction, LLC[,] are jointly

4

and severally liable to the Plaintiffs Scott Pinkham and Natalie Pinkham, husband
and wife, in the amount of $647,331.95.

The district court did not issue a separate decision explaining the basis for its damage award. The deputy court clerk served copies of the default order and default judgment on Appellants at their last known address.

Appellants later secured new counsel and on April 5, 2021, filed a motion to set aside the default and default judgment under Idaho Rule of Civil Procedure 60(b)(1), (4), and (6). They argued that the default and default judgment should be set aside based on excusable neglect or mistake as they requested an extension of time, did not have notice of the twenty-one-day deadline to inform the district court how they were proceeding, and could not find an attorney due to the holidays and COVID-19 pandemic. Appellants further argued that the default judgment was void because they had not received proper notice and an opportunity to be heard prior to the judgment being entered against them.

The district court denied Appellants' motion. It concluded that Appellants had not demonstrated good cause to set aside the entry of default because Appellants received two copies of the order granting the withdrawal motion and failed to file a notice of appearance of a new attorney or notice of self-representation within the required timeframe under Rule 11.3. The district court determined that Appellants' December 23 letter did not demonstrate a "sufficient reason to set aside the default judgment because of excusable neglect or mistake." Additionally, the court concluded Appellants were afforded due process because no hearing was required to determine damages in this case and Appellants received adequate notice at all relevant points in the proceedings. Appellants timely appealed the district court's decision.

## II.     ISSUES ON APPEAL

1. Whether the district court erred in denying Appellants' motion to set aside the entry of default.

2. Whether the district court erred in denying Appellants' motion to set aside the default judgment.

3. Whether any party is entitled to attorney fees on appeal.

## III.     STANDARDS OF REVIEW

We review a district court's decision denying a motion to set aside an entry of default for an abuse of discretion. *AgStar Fin. Servs., ACA v. Gordon Paving Co.*, 161 Idaho 817, 819, 391 P.3d 1287, 1289 (2017); *Bach v. Miller*, 148 Idaho 549, 552, 224 P.3d 1138, 1141 (2010). In

determining the appropriate standard of review for a decision denying a motion for relief under Rule 60(b), this Court must consider which subsection of the rule is being invoked. *In re SRBA Case No. 39576 Sub[c]ase No. 37-00864*, 164 Idaho 241, 248, 429 P.3d 129, 136 (2018) ("*In re SRBA Case No. 39576*"). A decision denying a motion for relief under Rule 60(b) is generally reviewed for an abuse of discretion. *AgStar Fin. Servs.*, 161 Idaho at 819, 391 P.3d at 1289; *Bach*, 148 Idaho at 552, 224 P.3d at 1141. In determining whether a court has abused its discretion, this Court asks "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). However, because a motion pursuant to Rule 60(b)(4) involves a question of law concerning whether a judgment is void, we exercise de novo review. *In re SRBA Case No. 39576*, 164 Idaho at 248, 429 P.3d at 136 (citation omitted). The interpretation of a court rule is also a question of law that this Court freely reviews. *E. Idaho Econ. Dev. Council v. Lockwood Packaging Corp. Idaho*, 139 Idaho 492, 495, 80 P.3d 1093, 1096 (2003).

## IV.    ANALYSIS

An entry of default is distinguishable from a default judgment. *Martinez v. Carrasco*, 162 Idaho 336, 340–41, 396 P.3d 1218, 1222–23 (2017). They are two separate events or steps in concluding a case, and the entry of default does not constitute a judgment. *Id.* (citations omitted). An entry of default is a judicial finding that the conditions for default have been satisfied but, unlike a final judgment, it does not contain any conclusions about what judgment should be rendered. "Upon default by the defendant, the allegations in the complaint are taken as true, and the plaintiff is relieved of any obligation to introduce evidence in support of those allegations." *Dominguez ex rel. Hamp v. Evergreen Res., Inc.*, 142 Idaho 7, 13, 121 P.3d 938, 944 (2005).

To set aside a default judgment, the moving party usually must move to first set aside the entry of default. *Martinez*, 162 Idaho at 341–42, 396 P.3d at 1223–24. This is because a default generally cuts the defendant off from raising any further opposition or objection to the claims asserted in the plaintiff's complaint. *See id.* at 342, 396 P.3d at 1224. If only the default judgment were vacated, the defaulting defendants would not be able to interpose any denial or affirmative defense and the trial court would simply enter another default judgment. *See id.*

6

In this case, Appellants moved to set aside both the entry of default and default judgment. We begin our analysis by reviewing whether the district court erred when it refused to set aside the entry of default.

**A. The district court properly denied the motion to set aside entry of default.**

Appellants first contend that the district court erred in refusing to set aside the entry of default because it should never have entered default in the first place. They argue that Idaho Rule of Civil Procedure 11.3(c)(3) provides that a district court "may" enter default judgment against a party if he fails to file a notice of appearance within twenty-one days, indicating that the district court was not required to enter default against them. They assert that the district court abused its discretion in denying their motion because the December 23 letter was sufficient to constitute a notice of self-representation under Rule 11.3, or in the alternative, because the letter set forth a sufficient basis to grant them more time to obtain new counsel. Appellants further contend that the district court erred because the default was entered in violation of Idaho Rule of Civil Procedure 55(a)(1), which required they be provided three days' advance notice of the application for default.

*1. The "good cause" standard governed the district court's consideration of Appellants' motion to set aside the entry of default.*

We first address the legal standard that governed the district court's consideration of Appellants' motion. The district court analyzed Appellants' motion under Rule 55(c), which directs that, "[t]he court may set aside an entry of default for good cause[.]" For reasons we explain later in this opinion, we conclude that, following the withdrawal of an attorney pursuant to Rule 11.3, it is Rule 11.3, not Rule 55, that governs the entry of default judgment (and by extension the entry of default). However, when considering a motion to set aside a default entered under Rule 11.3, we see no reason to depart from the "good cause" standard contained in Rule 55(c), which Idaho courts have consistently applied when considering motions to set aside a default entered in other circumstances. *See Martinez*, 162 Idaho at 341, 343, 396 P.3d at 1223, 1225; I.R.C.P. 55(c); I.R.F.L.P. 303. Thus, the district court considered the motion under the correct standard.

*2. The district court did not err in concluding that Appellants failed to demonstrate good cause to set aside the entry of default.*

Appellants bore the burden to demonstrate good cause to set aside the entry of default. Appellants first argue that good cause existed because their December 23 letter should be construed as a notice of self-representation for purposes of Rule 11.3. The Pinkhams assert that the district court correctly determined the letter did not constitute such a notice.

The district court did not err in rejecting this argument. The district court recognized the issue as one within its discretion, considered Appellants' argument, and explained why their letter did not constitute good cause to set aside the entry of default. The letter did not indicate that Appellants intended to represent themselves. The district court's decision was consistent with the language of Rule 11.3 and therefore it did not err when it denied Appellants' argument to set aside the entry of default on this basis.

Appellants also argue that good cause existed to set aside the default because the district court should have granted Appellants additional time to locate new counsel. However, Appellants' letter provided no indication of how much additional time they needed or what efforts had been made to secure new counsel up to that point. We are unpersuaded that a mere request for additional time to find counsel, coupled with a conclusory statement that they "haven't been able to find any due to the holidays[,]" provides good cause to set aside the entry of default.

We similarly reject Appellants' argument that good cause existed to set aside the default because the district court should have granted them additional time to find new counsel due to the COVID-19 pandemic. We first note that Appellants did not mention this ground in their December 23 letter to the district court. However, even if they did, and as discussed above, Appellants' letter failed to establish how much time they needed or what efforts had been made to find new counsel. Appellants' belated COVID-19 argument also failed to provide good cause to set aside the entry of default.

Appellants next contend that good cause existed to set aside the default because they did not receive three days' advance notice of the motion for default, as specified in Rule 55(a)(1). Appellants argue that the notice procedures in Rule 55 must be followed even where the default judgment is being entered pursuant to Rule 11.3. In contrast, the Pinkhams assert that Rule 11.3 provides an independent basis on which a default judgment may be entered, which is not subject to the requirements in Rule 55.

This Court's approach to interpreting court rules is similar to our approach to interpreting statutes. *Valentine v. Valentine*, 169 Idaho 621, 627, 500 P.3d 514, 520 (2021). The analysis begins with the plain language of the rule, read according to its "plain, obvious and rational meaning." *Id.* (quoting *Kelly v. Kelly*, 165 Idaho 716, 724, 451 P.3d 429, 437 (2019)). However, since this Court authors the rules, it is "not constrained by the constitutional separation of powers" that require adherence to the plain language of a statute regardless of the result. *State v. Montgomery*, 163

Idaho 40, 44, 408 P.3d 38, 42 (2017). The Idaho Rules of Civil Procedure are "construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(b).

Rule 11.3 governs the substitution and withdrawal of attorneys. If an attorney is granted leave to withdraw, the order permitting the withdrawal must be served on the party represented by the withdrawing attorney. I.R.C.P. 11.3(c)(1). The order permitting withdrawal must:

> notify the party whose attorney is withdrawing that the party's claims will be subject to dismissal with prejudice or default judgment may be entered against the party if the party does not, within 21 days after service of the order, either appoint another attorney to appear or file notice with the court that the party will be self-represented in the action.

*Id.* The rule provides for penalties if a party fails to appear or file a notice of self-representation. "If a notice of appearance of a new attorney or a notice of self-representation is not filed within 21 days after service of the order allowing withdrawal, the court may dismiss with prejudice any claims of the party or may enter default judgment against the party." I.R.C.P. 11.3(c)(3).

Rule 55, in turn, governs the entry of default and a default judgment where a party has failed to appear at all or has appeared but failed to defend the case. Rule 55(a)(1) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the court must order entry of the party's default." If the party has appeared in the action, however, "that party must be served with 3 days' written notice of the application for entry of default before default may be entered." I.R.C.P. 55(a)(1). Further, Rule 55(b)(2) states that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application [for entry of default judgment] at least 3 days before the hearing."

Rules 11.3 and 55 govern the entry of a default judgment in separate and distinct situations. Rule 11.3 provides that a court may enter a default judgment (and by extension the entry of default) against a party represented by counsel following counsel's withdrawal from the matter. In contrast, Rule 55 governs the entry of default and a default judgment against a party that has: (1) failed to appear in a matter, or (2) has appeared, but failed to plead or otherwise defend in a matter.

In this case, Appellants had appeared and defended their interests prior to their attorney's motion to withdraw. As a result, Rule 55 did not apply to the entry of default. Rather, Rule 11.3 controlled because it was the more specific rule in this instance. *See Ausman v. State* (*In re*

9

*Suspension of Driver's License of Ausman*), 124 Idaho 839, 842, 864 P.2d 1126, 1129 (1993) ("A specific statute, and by analogy a specific rule of civil or criminal procedure, controls over a more general statute when there is any conflict between the two or when the general statute is vague or ambiguous.").

This conclusion is consistent with our prior decisions. In *Sherwood & Roberts, Inc. v. Riplinger*, this Court held that the predecessor to Rule 11.3 was the more specific rule and, therefore, governed the determination of the motion for entry of default and default judgment. 103 Idaho 535, 538, 650 P.2d 677, 680 (1982). In that case, the appellant's attorney was granted leave to withdraw under the predecessor rule to Rule 11.3, Rule 11(b)(3). *Id.* at 536–37, 650 P.2d at 678–79. The appellant failed to file a notice of appearance or appear through counsel within the timeframe required by Rule 11(b)(3), and the district court entered default and a default judgment against him without providing further notice. *Id.* On appeal, the appellant argued he was entitled to the three-day notice provided under Rule 55(b)(2). *Id.* However, this Court rejected this argument, concluding that "[a]ny conflict between [Rules] 11(b)(3) and 55(b)(2) in this matter must be resolved in favor of Rule 11(b)(3), since it is both the more specific and the more recent rule." *Id.* at 538, 650 P.2d at 680 (footnote and citation omitted).

Just like the appellant in *Sherwood*, Appellants here argue they were entitled to the three-day notice provided in Rule 55. Appellants attempt to distinguish *Sherwood* based on a recent modification to Rule 11.3. This recent modification removed the phrase, "without further notice" from the language of the rule. Appellants assert that the removal of this language shows that notice under Rule 55 is now required in order to strictly comply with the rule and that *Sherwood* is therefore inapt.

The language in Rule 11.3 has been altered several times since it was originally adopted. When we decided *Sherwood*, the rule stated that if a party whose attorney has been granted leave to withdraw fails to appear in person or through newly appointed counsel within twenty days, this "failure shall be sufficient ground for entry of default against such party or dismissal of the action of such party, with prejudice, without further notice, which shall be stated in the order of the court." *Sherwood*, 103 Idaho at 536 n.3, 650 P.2d at 678 n.3. Despite the rule's language specifically allowing for the entry of *default*, this Court interpreted the rule to also allow for the entry of a *default judgment* without further notice. *Id.* at 538 n.6, 650 P.2d at 680 n.6 ("In the context of this particular rule, reference to entry of 'default' includes entry of 'default judgment.'"). In the years

following *Sherwood*, the language in Rule 11(b)(3) was altered to allow for entry of default and default judgment without further notice, consistent with this Court's decision in *Sherwood*. *See* I.R.C.P. 11(b)(3) (2013).

In 2016, this Court adopted a revised version of the Idaho Rules of Civil Procedure. *See* Order, *In re: Adoption of Newly Formatted Idaho Rules of Civil Procedure and Idaho Rules on Small Claim Actions* (Idaho Mar. 1, 2016). The newly adopted rules transferred portions of Rule 11(b)(3) to a new rule, Rule 11.3. The new Rule 11.3 removed language stating that default judgment may be entered "without further notice" if new counsel failed to appear or the party failed to file a notice of self-representation within the required timeframe. We have been unable to locate any committee minutes that explain the reason for this change. Following the changes, Rule 11.3 now permits courts to enter default judgment against that party if "a notice of appearance of a new attorney or a notice of self-representation is not filed within 21 days after service of the order allowing withdrawal[.]" The revised rule, like its 2016 predecessor, does not require any additional notice prior to entry of default judgment nor does it indicate that the notice requirements from Rule 55(a) apply. As a result, both the 2016 and the subsequently amended rule permit a district court to enter default judgment against a party without providing additional notice beyond that required to be included in the order allowing withdrawal.

The plain language of Rule 11.3 allows for entry of a default judgment, which necessarily includes the entry of default, if new counsel fails to file a notice of appearance or a party fails to file a notice of self-representation within the required timeframe. Appellants failed to file either and therefore Rule 11.3 permitted the district court to enter default against them. We affirm the district court's denial of Appellants' motion to set aside the entry of default.

## B. The entry of default does not prevent Appellants from challenging the amount of, or sufficiency of the evidence supporting, the damage award.

Appellants have failed to demonstrate error in the district court's entry of default against them. In *Martinez v. Carrasco*, this Court concluded that it would be ineffectual to set aside a default judgment if the entry of default was not also set aside:

> A default cuts off the defendant from making any further opposition or objection to the relief which plaintiff's complaint shows he is entitled to demand. A defendant against whom a default is entered 'is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action.' He cannot thereafter, nor until such default is set aside in a proper proceeding, file pleadings, or move for a new trial, or demand notice of subsequent proceedings. 'A default confesses all the material facts in the complaint.' Consequently, if the judgment were vacated,

11

it would be the duty of the court immediately to render another of like effect, and the defaulting defendants would not be heard for the purpose of interposing any denial or affirmative defense.

162 Idaho 336, 342, 396 P.3d 1218, 1224 (2017) (quoting *Title Ins. & Tr. Co. v. King Land & Improvement Co.*, 120 P. 1066, 1067 (Cal. 1912)). We clarified this holding, however, in an opinion issued three months later:

Default does not necessarily cut off a defendant's ability to participate in the litigation altogether. In a tort case, for example, a defaulting defendant is generally allowed to contest the amount of unliquidated damages. A defaulting defendant can also contest the legal sufficiency of the complaint and its allegations to support a judgment. A party in default cannot, however, bring an appeal seeking affirmative relief from this Court.

*CMJ Props., LLC v. JP Morgan Chase Bank, N.A.*, 162 Idaho 861, 865, 406 P.3d 873, 877 (2017) (citations omitted).

Our holding in *CMJ* establishes that, despite being in default, appellants are only permitted to file a Rule 60(b) motion to set aside default judgment on a basis that contests the amount of damages awarded. Under *CMJ*, appellants may only challenge that damage award on a basis that contests the legal sufficiency of the complaint and/or the sufficiency of the evidence supporting the damage award. To be clear, however, a defaulted party confesses all the material facts in the complaint. *See Martinez*, 162 Idaho at 342, 396 P.3d at 1224. Therefore, to the extent the complaint alleges facts supporting the amount of damages awarded, appellants are prevented from challenging those assertions. In this case, however, the Pinkhams have not contended, nor have we been able to identify, any allegations in their Amended Complaint that establish or support the amount of damages awarded in the default judgment. We, therefore, will consider Appellants' arguments that the district court erred in denying their Rule 60(b) motion, but only to the extent their arguments contest the legal sufficiency of the complaint and/or the sufficiency of the evidence supporting the damage award in the judgment.

## C. Appellants have failed to establish a right to relief under Rule 60(b).

Appellants assert that they are entitled to relief under subsections (1), (4), and (6) of Rule 60(b). In light of our conclusion that Rule 11.3, not Rule 55, governs the entry of default judgment in this case, we must once again initially address the legal standard that governed the district court's consideration of Appellants' motion to set aside the entry of default judgment. The district court analyzed Appellants' motion under Rule 60(b). Again, although Rule 11.3 controls the entry

of default judgment in this instance, we see no reason to depart from the Rule 60(b) framework for setting aside a default judgment entered pursuant to Rule 11.3.

Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reason that justifies relief." I.R.C.P. 60(b)(1), (4), (6). "When moving to set aside a default judgment, the moving party must not only meet the requirements of [Rule] 60(b), but [it] must also plead facts which, if established, would constitute a defense to the action." *Idaho State Police ex rel. Russell v. Real Prop. Situated in Cnty. of Cassia*, 144 Idaho 60, 62–63, 156 P.3d 561, 563–64 (2007) (citation omitted). "It would be an idle exercise for the court to set aside a default if there is in fact no real justiciable controversy." *Id.* In the context of this case, this means that Appellants cannot just contest the lack of evidence in the record supporting the default judgment, but they must also plead facts that, if established, would show the damage amount is less than what was awarded.

1. *Appellants waived their argument under Rule 60(b)(1) because they failed to present it in their opening brief.*

Appellants contend that the district court failed to properly consider Idaho's policy disfavoring default in doubtful cases. Appellants assert that their December 23 letter informed the district court that they had not abandoned their defense, they were attempting to retain counsel, and they did not have actual notice of the court's order requiring them to appear or face default. Appellants argue that these facts show they acted reasonably and are entitled to relief under Rule 60(b)(1).

We decline to consider this argument because Appellants did not argue in their opening brief on appeal that the district court erred in not granting them relief under Rule 60(b)(1). "We will not consider an issue not 'supported by argument and authority in the opening brief.'" *State v. Tower*, 170 Idaho 272, 276–77, 510 P.3d 625, 629–30 (2022) (quoting *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010)).

2. *Appellants have not established a right to relief under Rule 60(b)(4).*

Appellants focus their argument under Rule 60(b)(4) on the notice provisions of Rule 55. They argue a default judgment entered pursuant to Rule 11.3 must comply with the notice provisions set forth in Rule 55. Appellants also maintain that the district court's damages award did not comply with due process because it exceeded the amount sought in the Pinkhams' complaint and was entered without a proper evidentiary basis.

13

Rule 60(b)(4) provides that a district court may relieve a party from a final judgment if the judgment is void. "Generally, the Court may declare a judgment void only for defects of personal jurisdiction or subject-matter jurisdiction[,]" but a judgment is also void under Rule 60(b)(4) if the district court's "action amounts to a plain usurpation of power constituting a violation of due process." *Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009) (citations omitted); *see also D.L. Evans Bank v. Dean*, 173 Idaho 20, 29, 538 P.3d 793, 802 (2023) ("[A] void judgment may be attacked at any time.").

We are not persuaded by Appellants' argument that they were deprived of due process because they were entitled to additional notice under Rule 55(b)(2). For the reasons previously discussed, Rule 11.3 governed the entry of default and default judgment in this case. Therefore, the notice provisions of Rule 55(b)(2) were inapplicable. Moreover, as discussed above, we conclude that Appellants received sufficient notice of: (1) the consequences of not appearing in the action after their counsel was permitted to withdraw and (2) the Pinkhams' motion for default and default judgment. Appellants fail to demonstrate that not applying Rule 55(b)(2) in this instance violated their due process rights and rendered the default judgment void.

Appellants' other Rule 60(b)(4) argument attacks the sufficiency of the evidence supporting the amount of damages awarded in the default judgment. Appellants argue that the district court erred in entering a default judgment without a hearing, without a proper evidentiary basis, and in an amount that exceeded the amount pleaded. They argue this violated Rules 54(c), 55(b)(1), 55(b)(2), and 55(b)(3), and their constitutional right to procedural due process. The Pinkhams argue a default judgment entered pursuant to Rule 11.3 need not comply with any of these procedural rules. Further, the Pinkhams maintain that the district court's default judgment did not violate Appellants' procedural due process rights.

The district court offered no explanation for its calculation of damages when it granted the Pinkhams' motion for default and default judgment. The judgment appears to have been drafted by the Pinkhams' counsel and signed by the district court without alteration. In its memorandum decision denying Appellants' motion to set aside the default judgment, the district court explained that it relied on Mr. Pinkham's declaration submitted in support of the partial summary judgment motion addressing the liens on the Pinkhams' property and "determined a basis for calculating damages, determined an adequate amount of damages, and effectuated a judgment" without needing to conduct further inquiry.

14

"Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." *In re SRBA Case No. 39576 Sub[c]ase No. 37-00864*, 164 Idaho 241, 249, 429 P.3d 129, 137 (2018) ("*In re SRBA Case No. 39576*") (quoting *Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009)). Thus, an individual must be provided with notice and an opportunity to be heard before he is deprived of a substantial property interest. *Id.* This Court has indicated that "[d]ue process is not a rigid concept. Instead, the protections and safeguards necessary vary according to the situation." *Id.* (alteration in original) (quoting *Meyers*, 148 Idaho at 292, 221 P.3d at 90). An appellate court evaluates "the constitutionality of the proceedings as a whole." *Meyers*, 148 Idaho at 292, 221 P.3d at 90 (citation omitted).

Moreover, this Court has held that "if a default judgment exceeds the demand of the complaint, the excess is void" under Rule 60(b)(4). *Golub v. Kirk-Scott, Ltd.*, 157 Idaho 966, 970, 342 P.3d 893, 897 (2015) (internal quotation marks and citation omitted). Rule 54(c) states "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." To comply with Rule 54(c), the amount awarded will be the amount "actually demanded somewhere in the complaint when considered in its entirety," such that the defendant has notice of the amount and "can decide whether the action is worth defending." *Id.* at 971, 342 P.3d at 898 (emphasis and citation omitted).

Given our conclusion above that Rule 11.3 governs the entry of default judgment, a district court is not bound by the procedural requirements of Rule 55(b). Due process is a flexible concept, and Rule 11.3(c) satisfies due process because it requires that parties be provided with notice that they will be subject to dismissal with prejudice or default judgment if they do not appoint another attorney to appear or file a notice of self-representation with the court within twenty-one days after service of the order allowing withdrawal. Parties subjected to a default judgment under Rule 11.3, like Appellants in this case, are ones who have appeared in a lawsuit, litigated the underlying claims, were served with the district court's order granting their attorney leave to withdraw, and were served with the motion for entry of default and default judgment. While Appellants may not have received actual notice of the amount of damages sought, they received adequate notice of the amounts at issue by virtue of litigating the claims for almost eight months, which included engaging in discovery and motion practice. When their attorney was permitted to withdraw, they were provided with notice that default judgment could be entered against them if they failed to

appear as required by Rule 11.3. Further, they were provided with notice that the Pinkhams were seeking entry of default and default judgment and the dismissal of their claims. However, rather than appearing and defending against the motion for default judgment or filing a motion for an extension of time to respond, they sent a letter to the district court and then went silent for nearly three months.

To be sure, several aspects of the entry of default judgment in this case are concerning. For one, the Pinkhams did not include a specific request for damages in their motion or provide documents substantiating the monetary amount sought in the proposed default judgment. Although the district court later stated that it relied on Mr. Pinkham's declaration when computing the amount of damages awarded, the Pinkhams did not cite that declaration in their motion.

Also concerning is that Mr. Pinkham's declaration was not submitted to prove the damages that should be awarded to the Pinkhams. Instead, it was submitted in support of the Pinkhams' first motion for summary judgment, which addressed the validity of the liens that Appellants recorded on the Pinkhams' property and the lis pendens filed on Legacy's property. A review of the motion and declaration demonstrates that the documents were intended to prove the Pinkhams did not owe money to Appellants and, therefore, the liens against the Pinkhams' real property and the claims related to the liens were improper.

Appellants also call into question whether all items in the declaration were even recoverable. Mr. Pinkham's declaration included expenditures for services that were unrelated to Appellants' alleged breach, such as HOA fees, design services, and various sub-contractor services that Appellants argue were provided to the Pinkhams. As Appellants note, the amount of "expenditures" does not represent the measure of damages for the causes of action set forth in the Pinkhams' amended complaint. *E.g.*, *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 702–03, 874 P.2d 506, 513–14 (1993) (holding that measure of damages for a construction defect case is either the cost to complete or remedy the construction or the diminution in value of the property). The record does not reveal how the district court determined that total expenditures was the proper measure of damages.

While these issues are troubling, we cannot say they rise to "a plain usurpation of power constituting a violation of due process." *Meyers*, 148 Idaho at 291, 221 P.3d at 89 (quoting *Dep't of Health & Welfare v. Housel*, 140 Idaho 96, 100, 90 P.3d 321, 325 (2004)). A "usurpation of power" does not exist merely because there is a lack of evidentiary support for the damage award

or because the requirements of Rule 11.3 differ from those of Rule 55. We agree that the best practice would have been for the attorneys in this case to submit evidence supporting the amount requested in the default judgment and for the district court to require evidence be presented supporting the requested amount before issuing the judgment. However, the failure to do so does not violate the Constitution. This Court has recognized, "a judgment is not void and is therefore not within the ambit of 60(b)(4) simply because it is erroneous[.]" *Nieman v. Nieman*, 105 Idaho 796, 797, 673 P.2d 396, 397 (1983) (quoting *Marshall v. Bd. of Educ., Bergenfield, N.J.*, 575 F.2d 417, 422 (3d Cir. 1978)). We, therefore, conclude that Appellants have failed to establish that the default judgment be set aside under Rule 60(b)(4) because it violated their constitutional right to due process.

Appellants rely on a smattering of case law from this Court and the Ninth Circuit to support their argument that the district court's entry of default judgment violated due process. None of these cases, however, demonstrate that the default judgment in this case violated the Constitution.

Appellants cite our decisions in *Newbold v. Arvidson*, 105 Idaho 663, 672 P.2d 231 (1983), *abrogated on other grounds by Shelton v. Diamond International Corp.*, 108 Idaho 935, 703 P.2d 699 (1985); *Farber v. Howell*, 105 Idaho 57, 665 P.2d 1067 (1983); and the Ninth Circuit's decision in *Civic Center Square, Inc. v. Ford* (*In re Roxford Foods, Inc.*), 12 F.3d 875 (9th Cir. 1993), for the proposition that failing to provide notice as required by Rule 55(b)(2) violates due process and renders a judgment void pursuant to Rule 60(b)(4). These cases are distinguishable.

In *Newbold*, the defendant never filed an answer and was defaulted. 105 Idaho at 664, 672 P.2d at 232. After default, but prior to the entry of a default judgment, the defendant represented himself at a deposition. *Id.* at 665, 672 P.2d at 233. Beyond attending the deposition, the defendant did not defend the action and a default judgment was entered without providing three days' notice as required by Rule 55(b)(2) when a party previously appeared in the action. *Id.* at 665–66, 672 P.2d at 233–34. On appeal, this Court held that the defendant was entitled to the three days' notice required by Rule 55(b)(2) because representing himself at the deposition was "an appearance" under the rule. *Id.* Accordingly, this Court held that the default judgment was "voidable" and properly set aside by the district court. *Id.* at 666, 672 P.2d at 234.

Unlike here, the default judgment in *Newbold* was not entered pursuant to Rule 11.3. As we have already discussed, a default judgment entered pursuant to Rule 11.3 does not require

17

procedural protections commensurate with a default judgment entered pursuant to Rule 55 where a party has failed to appear or otherwise defend.

The Ninth Circuit's decision in *In re Roxford Foods* is distinguishable for the same reason. There, a default judgment was entered against a bankruptcy trustee after the trustee failed to appear or otherwise defend. *In re Roxford Foods*, 12 F.3d at 877–78. The trustee never received the three days' notice required by Federal Rule of Civil Procedure 55(b)(2), which the Ninth Circuit characterized as "a serious procedural irregularity that usually justifies setting aside a default judgment[.]" *Id.* at 879.

Unlike the default judgment here, the default judgment in *In re Roxford Foods* was not entered after the trustee's attorney was granted leave to withdrawal long after the onset of litigation. Indeed, the Federal Rules of Civil Procedure do not contain a rule analogous to Idaho's Rule 11.3, which renders federal case law as a general matter not particularly helpful to the due process question we are faced with today. "Due process is not a rigid concept" and "the protections and safeguards necessary vary according to the situation." *In re SRBA Case No. 39576*, 164 Idaho at 249, 429 P.3d at 137. Neither *Newbold* nor *In re Roxford Foods* addressed circumstances factually analogous to those present here.

Our decision in *Farber* is distinguishable because the defendants in that case did not receive proper notice under Rule 11.3. There, a default judgment was entered after the defendants' attorney was granted leave to withdraw pursuant to Rule 11.3. 105 Idaho at 58, 665 P.2d at 1068. Critically, however, the order granting leave to withdraw did not state that default could be entered "without further notice," which was a requirement under the rule in existence at that time. *Id.* at 58–59, 665 P.2d at 1068–69. This Court held that, because the withdrawal order did not state default could be entered "without further notice," the entry of default was "voidable" without the three days' notice required by Rule 55(b)(2). *Id.* at 59, 665 P.2d at 1069.

Here, in contrast, Appellants were notified in the district court's withdrawal order that a default judgment could be entered "without further notice." Therefore, not only is our decision in *Farber* distinguishable, it suggests that no additional notice under Rule 55(b)(2) is required when a party *is notified* in a withdrawal order that a default judgment can be entered "without further notice." *Id.* at 59, 665 P.2d at 1069 ("In the instant case the order did not contain the words, 'without further notice.' Therefore, any default entered without three day's [sic] notice is voidable.").

18

Appellants next rely on our decision in *Garcia v. Absolute Bail Bonds, LLC*, 161 Idaho 616, 389 P.3d 161 (2016), arguing that case demonstrates the district court committed "legal error" by failing to hold a hearing to ascertain the appropriate measure of damages. Appellants overlook the critical distinction between the procedural posture in *Garcia* and this case.

In *Garcia*, the defendants were defaulted after failing to appear. 161 Idaho at 619, 389 P.3d at 164. The plaintiffs later sought entry of a default judgment and the district court set the matter for a hearing to determine the award of damages pursuant to Rule 55(b)(2). *Id.* The district court awarded $3,300 in damages. *Id.* The plaintiffs timely appealed the district court's decision, arguing that they were entitled to more damages than the district court awarded in the default judgment. *Id.* On appeal, this Court noted that "the complaint did not allege a sum certain or a sum that could be made certain by calculation," which meant that "the [p]laintiffs were required to apply to the district court for a default judgment" pursuant to Rule 55(b)(2). *Id.* at 621, 389 P.3d at 166. The district court held a hearing on the matter, and this Court emphasized that the "purpose of the hearing is not simply for the court to rubber stamp the damages asserted by the [p]laintiffs." *Id.* Ultimately, the plaintiffs failed to demonstrate that the district court erred in its award of damages. *Id.* at 622, 389 P.3d at 167.

Our decision in *Garcia* articulates important principles related to ascertaining the proper amount of damages to be awarded in a default judgment. Yet, *Garcia* says nothing about whether a district court's failure to properly ascertain an award of damages renders a default judgment void pursuant to Rule 60(b)(4). *Garcia* was not a Rule 60(b) case, so this Court was not called upon to apply any of the standards applicable to a Rule 60(b) motion. Thus, while *Garcia* might support Appellants' argument that the district court committed "legal error" by failing to ascertain the appropriate measure or amount of damages, legal error does not automatically equate to a violation of due process. *Nieman*, 105 Idaho at 797, 673 P.2d at 397 ("[A] judgment is not void and is therefore not within the ambit of 60(b)(4) simply because it is erroneous[.]"). Accordingly, Appellants' reliance on *Garcia* is misplaced.

Finally, Appellants argue that the amount awarded in the default judgment violated Rule 54(c) because the district court awarded damages in excess of the amount pleaded in the Pinkhams' Amended Complaint. We decline to consider this argument because Appellants failed to support their argument with adequate argument and legal authority. *Rouwenhorst v. Gem County*, 168 Idaho 657, 664, 485 P.3d 153, 160 (2021). Beyond the language of Rule 54(c), Appellants have

cited no authority establishing that the amount of damages awarded "exceeded" the unliquidated sum sought in the Pinkhams' Amended Complaint, which prayed for "an award of damages to Plaintiffs in [sic] amount to be determined at trial[.]" While this Court has not had the opportunity to determine how Rule 54(c) should be applied in this instance, other courts have grappled considerably with this question. *See Meindl v. Genesys Pac. Techs., Inc.* (*In re Genesys Data Techs., Inc.*), 204 F.3d 124, 132 (4th Cir. 2000) ("[O]ur research reveals that Fed.R.Civ.P. 54(c) and its many state analogues have led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not 'exceed in amount that prayed for in the demand for judgment.'").

How to apply Rule 54(c) in this circumstance is an issue of first impression for this Court. As the Fourth Circuit explained in *In re Genesys*, different jurisdictions have reached different answers when confronted with the same situation we confront today. *Id.* The decisions from those jurisdictions discuss compelling policy arguments on both sides of the issue. Appellants failed to discuss or even cite any of these decisions to support their argument here. Appellants have failed to address why this Court should conclude a failure to comply with Rule 54(c) exists in this case. We do not resolve issues of first impression in a vacuum. Given the lack of Idaho precedent on the issue, it was incumbent on Appellants to grapple with the rule and decisions from other jurisdictions in support of their argument. They failed to do so and our precedent dictates that we will not do their work for them.

Appellants have failed to provide us with argument or legal authority explaining how the district court's default judgment violates Rule 54(c) when the Pinkhams sought unliquidated damages in their Amended Complaint. Appellants' other arguments that the default judgment is void are unpersuasive. We, therefore, conclude that Appellants have failed to establish that the default judgment should be set aside under Rule 60(b)(4).

3. *Appellants failed to preserve their argument under Rule 60(b)(6).*

Appellants list Rule 60(b)(6) as a basis upon which the district court should have granted them relief from the default judgment. Appellants assert that they are entitled to relief under Rule 60(b)(6) based on the same arguments they assert under Rule 60(b)(4).

Rule 60(b)(6) states that a district court may provide relief from judgment for "any other reason that justifies relief." To be entitled to relief, litigants must demonstrate "unique and compelling circumstances justifying relief." *Pizzuto v. State*, 168 Idaho 542, 551–52, 484 P.3d

20

832–33 (2021) (internal quotation marks and citation omitted). Given this stricture, "appellate courts infrequently grant relief under this rule." *Id.* at 552, 484 P.3d at 833 (citing *Dixon v. State*, 157 Idaho 582, 587, 338 P.3d 561, 566 (Ct. App. 2014)).

This Court has observed that a discrepancy between the amount of relief sought in a complaint and the amount of relief awarded by the district court may be a unique and compelling circumstance upon which relief may be granted from a judgment pursuant to Rule 60(b)(6). *Dawson v. Cheyovich Fam. Tr.*, 149 Idaho 375, 381, 234 P.3d 699, 705 (2010) (observing that the case may constitute unique and compelling circumstances justifying relief under Rule 60(b)(6) when plaintiff's complaint only pleaded an entitlement to a one-fourth interest in real property but the district court's order quieted title to entire property in plaintiff).

However, aside from quoting the language of Rule 60(b)(6), Appellants did not cite the standard applicable to Rule 60(b)(6) motions, made no argument that the lack of evidence supporting the damage award constituted a "unique and compelling circumstance" under the rule, or cite any caselaw concerning Rule 60(b)(6). "We will not consider an issue not 'supported by argument and authority in the opening brief.'" *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citations omitted). Accordingly, we decline to consider this issue because Appellants failed to properly support it on appeal.

Our decision today should not be construed as an endorsement of the process that resulted in the default judgment in this case. Instead, best practice would have been for the Pinkhams to submit evidence and briefing with their motion that established the legal and factual basis for the amount of damages requested. Alternatively, the district court could have held a hearing after the entry of default to determine the proper measure and amount of damages. We are troubled that it appears the wrong measure of damages was applied and that no evidence was submitted to the district court to support the amount of damages awarded.

However, as is often the case, both sides bear responsibility for the situation at hand. We are also troubled that, despite being notified of the need to appear and receiving notice of the motion for entry of default and default judgment, Appellants did not take the necessary steps to protect their interests or to contest the motion. Appellants were provided notice that the Pinkhams were seeking a default judgment without evidentiary support, yet they stood silent and did not contest the entry of default and default judgment for nearly three months.

Our decision today rests on our determination that, as the more specific rule, Rule 11.3 governed the entry of default judgment in this case. We recognize that, had the circumstances been different and Rule 55 applied, the district court would have required the presentation of evidence to support the amount of damages sought. Although Appellants failed to establish a due process violation that would render the default judgment void, we are concerned that, as currently written, the Idaho Rules of Civil Procedure set forth different evidentiary requirements for default judgments entered pursuant to Rule 11.3 than those entered pursuant to Rule 55. We will, therefore, be adopting changes to the rules to more closely align the evidentiary standards governing the entry of a default judgment in these two scenarios. In the meantime, we urge the Bar and our courts to exercise caution when both seeking and issuing a default judgment. It is worth repeating that the role of a district court following entry of default is "not simply . . . to rubber stamp the damages asserted by the [p]laintiffs." *Garcia*, 161 Idaho at 621, 389 P.3d at 166.

The dissent believes that this case can be resolved through a reasonable application of our existing rules and would "remand this matter so that the district court can examine and weigh the proof as to the amount of damages the Pinkhams are entitled to before entering its judgment." The dissent fails to meaningfully engage with the true question we must resolve in this case: whether Appellants have demonstrated that they are entitled to relief from the default judgment *because it is void pursuant to Rule 60(b)(4)*. In fact, the dissent at no point cites to Rule 60(b), does not explain pursuant to which subsection of that rule Appellants are entitled to relief, and evades long-standing principles that this Court has adopted for setting aside a judgment that has become final. The dissent's "reasonable application of our existing rules" also ignores that Appellants only properly raised Rule 60(b)(4) as a ground for relief and that Appellants barely scratched the surface of how to apply Rule 54(c) when a complaint prays for an award of damages in an amount to be determined at trial.

As discussed, a judgment is only void pursuant to Rule 60(b)(4) if it was entered without jurisdiction or amounted to "a plain usurpation of power constituting a violation of due process." *Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009) (citation omitted). The dissent explicitly declines to address Appellants' due process challenge and at no point mentions jurisdiction—the two bases for setting aside a judgment pursuant to Rule 60(b)(4). Nonetheless, the necessary implication of the dissent's position is that Rule 11.3 violates due process or jurisdictional principles if the procedures for entering a default judgment in Rule 55(b) are not read

22

into Rule 11.3. We cannot find legal support for that conclusion, especially given our conclusion above that the procedures of Rule 55 do not apply to the entry of default.

## A. No party is entitled to attorney fees on appeal.

Both parties seek attorney fees on appeal under the construction contract and under Idaho Code section 12-120(3). "Where there is a valid contract between parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs." *Humphries v. Becker*, 159 Idaho 728, 739, 366 P.3d 1088, 1099 (2016) (quoting *Farm Credit of Spokane v. W.W. Farms, Inc.*, 122 Idaho 565, 569, 836 P.2d 511, 515 (1992)). "This Court may award attorney fees on appeal in accordance with a contractual provision." *Off-Spec Sols., LLC v. Transp. Invs., LLC*, 168 Idaho 734, 740, 487 P.3d 326, 332 (2021) (citation omitted).

The parties' contract states:

[A]ll reasonable attorneys' fees and legal expenses incurred by one party, that arise out of the breach of this Contract by the other party, or that arise by a failure in the other party's obligations, shall be paid by the party who has breached or who has otherwise failed to perform.

We decline to award attorney fees to the Pinkhams under this provision because the appeal did not arise out of a breach of the contract or a failure in either party's obligations under the contract. It may well be true that the underlying litigation arose out of Appellants' breach of the construction contract, but this appeal stems from the process that resulted in the default judgment. As a result, the Pinkhams' attorney fees were not incurred out of a breach of the contract or due to a failure in the other party's obligations. We also decline to award Appellants their attorney fees because they are in default and therefore cannot argue that their fees resulted from either a breach by the Pinkhams or by their failure to perform their obligations under the contract.

Idaho Code section 12-120(3) grants attorney fees to a prevailing party in a case concerning a commercial transaction. Appellants did not prevail and therefore are not entitled to fees under this section. We also decline to award the Pinkhams fees under this section because an agreement to construct a house for personal use is not a "commercial transaction" for purposes of section 12-120(3). *Frontier Dev. Grp., LLC v. Caravella*, 157 Idaho 589, 599, 338 P.3d 1193, 1203 (2014). The contract at issue here concerned the construction of a home for personal use and, therefore, does not constitute a commercial transaction for purposes of section 12-120(3).

## V. CONCLUSION

We affirm the district court's order denying Appellants' motion to set aside the entry of default and default judgment. We decline to award attorney fees on appeal. The Pinkhams are awarded their costs pursuant to Idaho Appellate Rule 40.

Justices BRODY and MEYER CONCUR.


MOELLER, J., dissenting.

We have before us an extraordinary case, the likes of which I have never seen. The Pinkhams filed a complaint, which they later amended, requesting an unspecified amount of monetary damages. The prayer merely stated that the amount sought would be "determined at trial[.]" Yet, without (1) notice of the full amount claimed in the complaint, (2) proof of the amount requested in the motion for a default judgment, or (3) an explanation from the district court as to the legal or factual basis for the amount awarded, the district court entered a default judgment against Appellants in an amount approaching $650,000. Although the majority acknowledges that certain aspects of the entry of the default judgment in this case are "concerning" and "troubling," it still concludes that under our current rules, there was no error in this procedure. Because I, too, am concerned and troubled, I must respectfully dissent.

I concur with much of the legal analysis in the majority's opinion, as well as its commitment to amend the applicable rules to avoid similar confusion in the future. I also agree with the majority in noting that the Appellants dropped the ball when they failed to act diligently both before and after they were given notice of their attorney's withdrawal. Nevertheless, I do not agree with the majority's conclusion that the Appellants are not entitled to any relief on appeal given the lack of proof in the record justifying the amount awarded in the default judgment. While I have concerns with aspects of the "flexible" due process analysis applied by the majority in this case, I need not address it here because I believe this case can be resolved by a reasonable application of our existing rules.

To be clear, the Pinkhams were entitled to an entry of default and a default judgment. It has long been understood that a party who allows a default to be entered against them concedes liability. *E.g.*, 46 Am. Jur. 2d *Judgments* § 285 ("An entry of default establishes a party's liability."). Thus, due to their own lack of diligence, the Appellants may no longer contest liability. However, since no amount of damages was pleaded in the amended complaint, and no proof of

24

damages was provided to the district court when the Pinkhams sought their default judgment, the amount of damages to which the Pinkhams are entitled remains an open question. While the majority properly acknowledges that courts should not "rubber stamp" damages requested in default cases, that is exactly what happened here.

Nothing in Rule 11.3 justifies the majority's concern that, "as currently written, the Idaho Rules of Civil Procedure set forth different evidentiary requirements for default judgments entered pursuant to Rule 11.3 than those entered pursuant to Rule 55." I agree with the majority that Rule 11.3, as the more specific rule, governs the entry of a default judgment in this case. However, I do not agree with the majority's conclusion that Rule 11.3's governance over the *entry of default* somehow obviates the need to follow the procedures set forth in Rules 54 and 55 for *determining the amount* of the default judgment.

The Idaho Rules of Civil Procedure establish that if the damages sought exceed the amount pleaded in the complaint, they must be supported by either submitting an affidavit under Rule 55(b)(1) or by conducting an evidentiary hearing under Rule 55(b)(2). *See* I.R.C.P. 55(b) ("Entering a Default Judgment"). *Compare* I.R.C.P. 55(b)(1) ("*For Sum Certain*"), *with* I.R.C.P. 55(b)(2) ("*Other Cases*"). Likewise, Rule 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." This language is also reflected in Idaho Code section 5-336, which provides:

> *A judgment by default shall not be different in kind from or exceed in the amount that prayed for in the demand for judgment.* Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleading. Provided, however, if a judgment by default is entered in any claim for relief for personal injury or death pursuant to Idaho [R]ule of [C]ivil [P]rocedure 8(a)(1), after default is entered, the court shall conduct such hearings or order such reference as it deems necessary and proper pursuant to Idaho [R]ule of [C]ivil [P]rocedure 55(b)(2) to determine the appropriate amount of damages.

(Emphasis added). While the third sentence is largely inapplicable since this case does not concern "personal injury or death," the first two sentences are instructive. The first sentence sets forth the general rule that the damages awarded in a default judgment must not be "different in kind from or exceed in the amount" that is sought in the complaint. The second sentence only applies to cases in which no default has been entered and states that damages are awarded based on "entitlement"— *i.e.*, liability *and* some form of proof must be provided. Applying a plain reading of the statute and

25

the pertinent rules leads to the simple conclusion that, before plaintiffs are awarded a default judgment for a specific sum in excess of the amount set forth in the complaint, they must substantiate their claim.

Here, the district court offered no explanation for its calculation of damages when it granted the Pinkhams a default judgment for $647,331.95. The judgment appears to have been drafted by the Pinkhams' counsel and signed by the district court without alteration. In its later memorandum decision denying Appellants' motion to set aside the default judgment, the district court explained that it relied on Mr. Pinkham's declaration submitted in support of his motion for partial summary judgment seeking the removal of the liens on the Pinkhams' property. From this declaration, the court "determined a basis for calculating damages, determined an adequate amount of damages, and effectuated a judgment" without conducting further inquiry. However, not only did the Pinkhams fail to include a specific request for damages in their summary judgment motion, but they also failed to offer documentary or testimonial evidence substantiating the monetary amount sought in the proposed default judgment. Interestingly, the Pinkhams never cited to the very declaration that the district court relied upon sua sponte when computing the amount awarded.

In sum, this award of nearly $650,000 in damages was issued without (1) any amount being pleaded in the unverified complaint, (2) any amount being requested in the motion for a default judgment, (3) any proof of the amount set forth in the proposed default judgment, or (4) any explanation from the district court as to the legal or factual basis for the amount it ultimately awarded. This is not just a default judgment that was unsupported by the complaint (since the complaint did not seek a sum certain), *see Golub v. Kirk-Scott, Ltd.*, 157 Idaho 966, 971, 342 P.3d 893, 898 (2015), but it also appears to be the type of "rubber stamped" award of damages we have previously cautioned against, *Garcia v. Absolute Bail Bonds, LLC*, 161 Idaho 616, 621, 389 P.3d 161, 166 (2016).

Because the record of the proceedings below fails to provide a factual basis for the damages awarded, I would reverse and remand this matter so that the district court can examine and weigh the proof as to the amount of damages the Pinkhams are entitled to before entering its judgment. While the Pinkhams are entitled to a default judgment that will make them whole for the Appellants' conduct in this matter, the amount Appellants are ordered to pay must be ascertained through proof that is subject to review on appeal. Awarding damages in a defaulted case—a judicial act that may seem routine or commonplace—should never become perfunctory,

26

regardless of whether the amount sought is $650 or $650,000. Likewise, the requirement of supplying some proof is not asking too much from a plaintiff. In fact, it is the bare minimum that justice requires.

In reaching this conclusion, I acknowledge that we have held, as the majority correctly notes, that "[d]ue process is not a rigid concept," *Meyers v. Hansen*, 148 Idaho 283, 292, 221 P.3d 81, 90 (2009). As mentioned above, I have not explored the Appellants' due process challenge because it is not necessary under our rules. Nevertheless, I note with irony that the majority, in attempting to avoid applying a "rigid" due process analysis, appears to have replaced it with a doctrinaire application of the Idaho Rules of Civil Procedure. Because I would apply neither a "rigid" reading of our rules nor a "flexible" notion of due process to the default judgment entered in this case, I respectfully dissent.

Chief Justice BEVAN concurs in the dissent.